Case number is 21-1129 Mike Kowall v. Jocelyn Benson Argument not to exceed 15 minutes per side Mr. Birch when you're ready you can argue for the appellant Good morning, your honors. John Birch on behalf of the 10 term-limited Michigan senators and representatives, I have reserved 5 minutes for rebuttal. May it please the court. Michigan's state term limits, the shortest and harshest in the nation, impose an absolute ban on the participation of a certain category of candidates, experienced legislators. And while Michigan's sovereign interest in structuring its government is entitled to deference, that does not mean the state gets a pass under the First Amendment. And in support of that proposition, I'll press three points. First, that candidates have independently cognizable First Amendment rights. Second, that term limits are particularly pernicious burdens on such rights. And third, that Michigan's term limits are unconstitutionally strict. So starting with candidates, they have independent First Amendment rights of association and speech that can be abridged. In Lubin, the U.S. Supreme Court held that a $700 California ballot access fee violated an individual candidate's First Amendment rights of expression and association, to wit, his important interest in the continued availability of political opportunity. And then earlier this year, this court in Gravelin v. Benson, a panel that included Judge Gilman, held that when a candidate wishes to appear on the ballot, the Supreme Court has viewed state-imposed restrictions with great skepticism. And the panel applied strict scrutiny to a Michigan requirement that an independent Attorney General candidate collect 30,000 signatures during COVID because the hallmark of a severe burden is exclusion or virtual exclusion from the ballot. Why would term limits be? I mean, that was something that was contemplated, discussed at the founding. Clearly, the anti-Federalists viewed term limits as something that they wanted to press. And the answer was never they're unconstitutional. It was just that's not something we need. I mean, why isn't that something no different than an age restriction? That's a great question. With the age restriction, it can satisfy strict or heightened scrutiny, but it depends on how severe it is. And that's the same problem with term limits. In Crawford, did the Supreme Court, I thought they applied like a rational basis scrutiny. There, because it was under equal protection. But if you think about it in the First Amendment context and varying burdens. I'm sorry to interrupt you, but if we switch the exact fact pattern to a First Amendment claim, you're saying those judges in Crawford would get heightened scrutiny? They would get heightened scrutiny depending on the severity of the burden. So think about it this way. If you have a 70-year age limitation for judges in Michigan, which is common throughout the country, no one would contest that that is constitutional. But if that age limit was set at 30 years, anybody who's more than 30 years of age can't run to be a judge, then I think almost any court would have a severe problem with that. Just like if you required a million signatures instead of 30,000 signatures. But the question would be, so go back to 30 years. We could say that's irrational or even something, I don't know, the court's creating all kinds of levels of scrutiny, something between rational and intermediate. But why, I guess, why would we apply more heightened scrutiny here to the candidates than we would in Miller to the voters? Because Thornton, the U.S. Supreme Court's term limit decision, says that you should. Yeah, but that was, correct me if I'm wrong, that related to the federal term limit. Absolutely. And the holding turned on the qualifications clause. But the court also addressed the First Amendment burden on candidates. And this is what it said. Term limits are more pernicious than procedural ballot barriers, such as minimum signatures, because they exclude candidates from the ballot without reference to the candidate's support in the electoral process. So in cases like Gravelin, which Judge Gilman sat on, simply a signature requirement had strict scrutiny applied to it because You've said over and over that candidates have no right to run for office. The Supreme Court has said in Bullock and in Gregory and all these other cases that candidates, I mean, it doesn't seem like candidates have any more rights than voters do. Judge Delbandia, you're absolutely right that in Bullock and other cases, the Supreme Court and this court have said that you do not have a fundamental right to appear on the ballot. But what the Supreme Court said in Lubin is that an individual candidate does have First Amendment rights of association and free speech that come into play. And those rights have to be respected. So then the question is, how is a candidate different than a voter? I mean, that's what distinguishes this case from Miller. That's what we're hanging our hat on. And that's because the question isn't who has a higher degree of protection. They both have First Amendment protections. The question is, who has the higher burden? Now, the burden this court held in Miller on a voter is slight. Because although you may not be able to vote for this particular candidate, you can still vote for candidates who have executive experience. Why is the burden not on the candidate any greater? He can run for a different office or she can run for governor or something. Because it's total exclusion from that office. Just like in Gravelin, it was the candidate What if it was five term limits? Any different? Absolutely. I think the longer the term you have, if it was consecutive term limits instead of a lifetime ban, that makes all the difference in the world. I don't confuse those. So we look at the merits first and then we back into whatever the scrutiny would be? No, I think what you're doing is you're looking at the impact, the burden on the voting rights. I'm sorry, on the ballot participation and deciding how severe it is. That's step one. So this is basically the Anderson-Burdick test? So we look at the severity of the burden, then we decide what scrutiny to apply? Well, our view is that strict scrutiny would apply, just as it did in Gravelin and actually in 2020 in Ashaki v. Whitmer, which was another signature case. But even under Anderson-Burdick, because it's a total ballot exclusion, which is Gravelin. Did Gravelin use Anderson-Burdick? It did, but that was a signature requirement. That was a process requirement. It wasn't a substantive qualification barrier, which Thornton says is more severe. But let's stick with Anderson-Burdick. Is that the case Judge Radler was on and he disagreed with Anderson-Burdick applying in that situation? I believe that was Daunt. Which case was that? Daunt was the – Daunt, it was Daunt. Yeah, that was the Independent Redistricting Commission. What about the governor in Virginia, the Virginia term limit or the Kentucky term limit? Are those all unconstitutional under your theory? No, because when I look at those, I see that they are within the mainstream of what term limit regimes look like around the country. Virginia is one term. Well, for the governor, when you're talking about the different – Right, well, that's a big platform. Talk about First Amendment rights. It's one term or two term. And as this election cycle shows, the Virginia governor can come back. One of the most harsh things about Michigan – It is. Around the country. And that's all Michigan's doing. Well, what Michigan is doing, it's pairing a six-year term in the House, which is shorter than anybody else. There's no one else that has less than eight. And they're pairing that with a lifetime ban, which Virginia doesn't have, Kentucky doesn't have. There are only five states in the country that have lifetime bans. And four of those have longer terms than Michigan. It's the Goldilocks principle. And it works the same whether you're talking about – If it's so bad, why don't you all change it? Because it's difficult to persuade – It's been around for a long time. First of all, it's difficult to persuade voters to give more time to the people that they dislike, politicians, number one. But number two – Maybe they have a reason for that. I mean, the anti-federalists thought power corrupts. And the more you have power, the more it corrupts. It does. But the second reason – I think a lot of voters agree with that. The second reason is that they have recognized First Amendment rights. So let's say that the ban was instead people who have beards can't run for office. No one would say you have to go to the ballot box to try to overturn that and get a constitutional amendment so that people with beards can run for office. What you would do is you would analyze their deprivation of First Amendment rights. And if they state a claim, then you rule in their favor. There would be a rationality backstop. And we would say that's irrational. You know, the laboratory of democracy thing has to stop at some point. Absolutely. It has to stop at some point. Are you saying this is basically on that level of irrationality? Well, I'm not saying it's irrational. But I'm saying even under Anderson Burdick that the burden on the candidates' First Amendment rights is greater than it can be for the state's interest in – If we were to apply Anderson Burdick, then doesn't Miller just say, no, that's it, you would lose? No, because you would still have to reexamine the burden. And the burden on the voter is different – If we were to apply Anderson Burdick, we'd have to look at the candidate burden. Correct. Absolutely. And you're saying it would result in a different level of scrutiny. Exactly. Precisely. You know, how do you distinguish – We've got this case Molina-Crespo versus U.S. Merit System. It was a 2008 Sixth Circuit decision that says, and I quote, an individual does not have a fundamental right to run for elected office. Yes. I wholly embrace that. There's not a fundamental right. There's no 14th Amendment substantive due process right to run for office. But Lubin and Gravelin and Ashaki and numerous other cases say that candidates do have That's different than a fundamental right to run for the ballot. And maybe that's why we have somewhat of a sliding scale and not an absolute on or off switch. But I want to emphasize the Goldilocks principle, because it applies in campaign finance and it applies in the election context. If you had a 30-year age limit, that would be too much. If you had a 10-year residency requirement, that would be too much. If you had a 1 million signature requirement, that would be too much. If you have a $700 ballot fee, the U.S. Supreme Court has said that is too much. Here, this is too much. What level of scrutiny would you apply to all the qualifications in Article 7, Section 7 of the Michigan Constitution? Age, U.S. citizen, elector of the district, can't be convicted in the last 20 years of a felony, breach of trust. For each one of those, I would look at the burden on the candidate. And then I would pick something in the range of minimal scrutiny, as applied in Miller, intermediate scrutiny. All that impacts their speech rights, right? It does, and to different degrees. When you commit a crime, you sacrifice some of your constitutional freedoms, including your liberty to be out and about in the community. And so you can see how that burden there might be less severe. If you've got a modest residency requirement, that may not be a big burden. Now, change that residency requirement to 20 years living in the district, that would get strict scrutiny. And when you're talking about the harshest, strictest term limits in the nation, a lifetime ban after only six years, that violates the Goldilocks principle. It sounds like what you're fussing about is the policy decisions made by the voters of Michigan and the populace. Don't they have a wide, wide range of policy? And we're not here to set policy. I completely agree. And they have a wide range of possibilities that they can enact as policy. But there's still some constitutional restrictions. And as you said in Gravelin, complete exclusion from the ballot is the biggest restriction that there is. That's why in Gravelin, this court applied strict scrutiny. Now, maybe you get that far in this case, maybe not. But certainly when you're talking about a six-year lifetime ban, that's too far. So you're just saying basically it's irrational. No, I'm not saying it's too rational. I'm saying that the state's interest in organizing its own form of government has to give way when the burden on the candidate, the exclusion of them from the ballot, is too great. And this is one of those two greats. The facts of this case, Miller is certainly against you, right? Miller is certainly against me. Honestly, I think it's your opinion in Gravelin and this court's decision in Ashaki, both of which involved signature requirements, which are less burdensome than qualification bans, which is what the Supreme Court said in Thornton. And in Gravelin, this court said 30,000 signatures during COVID was too much. In Ashaki, signature requirements during a stay-at-home effectively excluded candidates from the ballot. Term limits seem to be qualifications versus access. And the signature is access. Yes. And what Thornton says is that substantive barriers that are disconnected from a candidate's support in the electoral process, they talk about signatures specifically, are worse. That's what the majority opinion says. And yes, it was in the federal context. Yes, it was the qualifications clause. But Thornton says that this kind of substantive ban is worse than a signature requirement when we're talking about constitutional rights. Didn't we, in Thompson v. DeWine, did not apply strict scrutiny to that Ohio signature requirement? You applied intermediate scrutiny. Yes. And here, I would say that the burden is greater because there, you at least had the ability to collect some signatures. Here, six years in the House and you're gone forever. But I guess I'm curious about some of the COVID cases seem to be talking past each other. Would you agree with that? I think that they're all applying Anderson-Burdick. And I think you should just go straight to a higher scrutiny here. But let's assume that we're in Anderson-Burdick world. In this circuit, some of us have questioned the application of Anderson-Burdick outside of Anderson and Burdick. Correct. But because all the COVID cases and Miller all involve Anderson-Burdick, let's just stay there. The reason you get intermediate scrutiny in the DeWine case is because the burden wasn't as great as it was in Ashaki and Gravelin. I mean, in each case, this court did exactly what we were talking about, Judge Nalbandian. It looked at the burden on First Amendment speech and association rights first, then decided what level of scrutiny to apply, and then reached a substantive outcome. They have other avenues to get their speech out and association out. I mean, it is almost like you're claiming a fundamental right to run for office. Not claiming a fundamental right, just claiming an abridgment of the First Amendment rights to speech and association. I have the ability to go out on the street corner right now and tell everybody what I think Michigan should adopt as policy. I could assert my candidacy. But for these ten plaintiffs, or at least nine of them, they don't have the ability to run for their former offices and use that as a megaphone. They can start a podcast. They can go on Fox or CNN. They can do all sorts of things. Sure, they can do that. But as we explained in the brief, the principle brief, the Supreme Court has said that there's something unique about being a candidate for a particular office. Because it gives you access to media platforms and other things. And voters want to keep it unique. That's why they put in term limits. And they're allowed to do that. But if they violate the Goldilocks principle and they go too far, which Michigans have, that's unconstitutional. You don't have a case that says Goldilocks principle, do you? Anderson Burdick, I think, is the Goldilocks principle. That's your interpretation. It's my interpretation. But to the same reason, as I've said, that a 30-year age limit would be unconstitutional. A million signatures requirement would be unconstitutional. The harshest, strictest term limits in the nation, too, have to be unconstitutional. You want to save any time for rebuttal? I would like to keep that whole five minutes if you would indulge me. Okay, you can have it. Thank you. Thank you. Good morning. Goldilocks or the Brown Bears? I'd probably go with that the Michigan's term limits are just right. May it please the Court, Assistant Attorney General Eric Grill on behalf of the appellee, Michigan Secretary of State Jocelyn Benson. I want to start just addressing why the counsel's reference to Gravelin, I think, is inapt. The issue in Gravelin was an independent candidate, which many courts have repeatedly recognized that when you're dealing with independent candidates or minority candidates, different rules apply. Because at that point, you're excluding an entire viewpoint from the marketplace of political ideas. That's not what this is. This is a term limit that applies to all candidates equally. It doesn't exclude specifically one this viewpoint or that viewpoint. They're viewpoint mutual. I was surprised by Michigan's view that Anderson-Burdick applies here when in Miller, we said it could be Anderson-Burdick or a lower level. As Mr. Bursch pointed out, we were dealing with voters and not candidates. But how do you view that? In other words, what's Michigan's perspective on the difference, A, between voters and candidates and their First Amendment, the infringement on their First Amendment rights, and, B, what level of scrutiny should apply? I think Miller is still apt in the sense of whether you apply Anderson-Burdick or the deferential approach that Michigan's term limits are upheld either way. Yeah, but that's not what I'm asking. I get that that's your position. My point is, which one should we apply and why? Why shouldn't we apply a stricter scrutiny, I guess? It could be Anderson-Burdick applied more strictly or some stricter scrutiny, not Anderson-Burdick. I take it your friend on the other side's point is candidates get higher, this case gets higher scrutiny than Miller. I mean, he's got to get himself out of Miller, right? I mean, we all agree he's got to, whatever. So his hook is the candidate. And so going back to Judge Lepar's question, I mean, what is your response to that? My response is that there can be no difference between the candidates and the voters. So you're saying they're exactly the same, and therefore whatever the Miller discussion was about Anderson-Burdick versus the other rational, whatever the lower scrutiny was, is irrelevant because they're basically just on all fours? Exactly. The right at issue here is the First Amendment right of association. That right of association is between the candidate and the voters themselves. And the speech, right? It's the association with each other. I mean, Mr. Bursch says both the association and speech because it gives you a platform on which to speak which amplifies your voice. Right. But there again, the case in Miller was the claim brought by the voters to say we want to get together and speak and achieve our political objectives together by advancing these particular candidates. That works the same way when you're dealing with the candidates wanting to talk to the voters and achieve those same objectives. But what about the fact that this is so strict? Like it's the strictest in the nation. Why shouldn't that have some bearing on how we approach this scrutiny-wise? I would say these are the exact same term limits that were at issue in Miller. They haven't been changed. So it would be the same case presented today as it was 23 years ago. Assuming that the candidates and the voters are the same. And what do we do with Lubin? I mean, the filing fee case. There again, that's the filing fee and the idea of whether or not that you're setting a threshold for wealth. And that was one of the other traditional categorizations that the courts have found some pause is if you're setting a difference when candidates are based on their wealth or based on their status as minority or independent candidates. That's not the issue here. There is no fee applied. The term limits apply to all candidates equally. And it doesn't exclude. Wasn't Lubin a First Amendment case, though? Am I wrong? Your Honor, I can't say for certain. I would have to look back at the case. Okay. Go ahead. I'm sorry. And going back, what I wanted to emphasize is that the burden at issue in this case is not the burden on their ability to be a candidate. It can't be because there is no fundamental right to be a candidate. The only burden that we can look at in this case would be the burden on their ability to associate together and achieve their political ends together. It was both equal protection and speech, but I can't remember what they were. Go ahead. So the association right is the same, basically? Right. It's the ability of the candidates to associate with their voters and the voters to associate with their candidates. Is there a case that says that? It would be Miller, is what I would point to, is the fact that that was the associational right. Miller doesn't address candidate qua candidate, does it? There is a part in the Miller case. I don't have the page number in front of me, but they talk about the fact that the associational right is to associate together and work together to advance their particular candidates to achieve their political objectives. That's the idea. That's the associational right, and that's cooperative with each other. It's the same right to associate with the candidate that the candidate has to associate with the voter. And the idea that there would be a distinction based on the candidate status, I think, instinctively feels wrong because it inherently elevates the candidates to have greater First Amendment protection, greater associational protection than the voters would, which I think runs contrary to any sense of how the First Amendment is meant to operate. But beyond that, it's devoid of any basis in law. Certainly, there's nothing in the language of the First Amendment that separates between candidates and voters. There has been no federal court anywhere in the nation that has found a distinction. But their associational and speech rights are different, aren't they? Maybe not as much their associational, but their speech rights, right? I would say no because, again, what speech are we talking about? Is it the speech to say these are the things we believe, these are the laws we want passed? Then that's the same thing the voters had in Miller. And particularly in this case, since all of the plaintiffs in this case are major party former candidates and office holders, their views have been consistently advanced together with the parties they formerly represented. Well, let me ask you a different question. I gather the district court also ruled on the state law claims the plaintiffs had, right? She did. The district court did reject the state law constitutional arguments as well. I wonder if she should have done that if once she decided there was no federal claim, should she have just declined to exercise supplemental jurisdiction and let the state courts decide on the state-led state law violations? I think she could have. The district court could have sent those and said we're not going to do it. I don't think she was precluded from doing so. But isn't this, I mean, why should federal courts get involved if we're not going to grant the federal claim? Why should we get involved in the state? We're just issuing an advisory opinion at that point. Well, I would say that if that were the result and that would be the basis to say the federal court should not, or the district court should not have addressed the state law claims, then we would still prevail on that basis and those claims would have been dismissed as they were in summary judgment, perhaps not with a merits determination, but those claims would still have been rejected. No, I agree. They'd be rejected for that the court shouldn't exercise supplemental jurisdiction because, I mean, those are important claims that the Michigan courts should resolve, not our court. What I would say in response is that to a large extent, the district court relied on Michigan courts having already determined much of those claims. In the Massey case, the Michigan Supreme Court, you know, basically addressed a lot of the same arguments about the constitutionality of Michigan's term limit proposal based on supposed procedural defects in the form of the petitions or the language of the ballot language. So in that sense, the district court was essentially repeating what Michigan courts had already concluded correctly. I know we have some Sixth Circuit cases that say a district court abuses its discretion in exercising supplemental jurisdiction once the federal claims are dismissed. I don't think it was an abuse of discretion in this case. However, Your Honor, if that was the determination of the court that the district court shouldn't have addressed those, it would still, I think, result in the same end result, which is that the appellant's claims in this case would be dismissed. So from that standpoint, I think we end up at the same place. Miller left open whether term limits are a severe burden. Your friend argues they are a severe burden, right, lifetime limits. Why shouldn't we give heightened scrutiny to something that is a severe burden here? I would disagree that I don't think Miller left it open. I think what the court said was we see these are the arguments, but even if you applied a compelling interest, narrow tailoring type of analysis, the term limits still endure. There was the suggestion in the Miller opinion that the court really felt it was more of a rational basis based on the fact that these were not really a severe burden case. But the court went the further step to say that even if it was, it still is constitutional. So in that sense, I don't think it left it open. I think it seems to me that it closed the door pretty hard on the idea that that would be a viable argument. Do you agree that there are severe limits? I don't. They ban them for life, unlike almost anywhere else. I would say because for the exact same reasons this court said in Miller, which is that it's hard to distinguish the term limits in this case and an age limit restriction in the sense that they both exclude a class of candidates from their ability to run. What about the example if you weren't allowed to run after 30? No one has ever tried that. I think it would be interesting to see how the courts dealt with it. My expectation would be that the states would have to do a lot of dancing to show that that met any level of their state interest. The sense that what is the state's interest, even arguably in saying that 30 years is an age limit that would meet their objectives. In this case, we have a term limit because the stated objective or the purpose of this was to turn over the legislature completely every few years. Nothing else other than a lifetime ban will do that. That was the narrow tailoring that the court here in Miller said that that works. There's nothing else that will achieve that objective. It satisfies that level of scrutiny even if we got there. With that in mind, at this point I struggle to think of what else I could say that this court hasn't already said. Can I ask you back to this question about independent candidates? Are you saying that independent candidates or minority candidates, whatever it is, minority parties or small parties, they have more rights? It's not more rights. It's the sense, I think, that the courts take a longer look at it because of the implications or the suspicion that when you're dealing with excluding minority or independent voices from the political marketplace, that there's a greater risk of there being some secondary or related purpose of excluding those voices from the ballot. Whereas in this case, in term limits… You're saying that explains the result in whatever, Gravelin, whatever that case is. Gravelin was an independent candidate for a statewide office. Is there any indication in that case that that's what mattered? I guess I'm trying to… I understand your distinction. It kind of matches up with the facts, but I'm struggling to see what the legal significance is. The legal significance would be that when you look not just in this circuit but nationwide, when the courts have looked at ballot access restrictions, they tend to fall in one of two boxes, the one being based on wealth and the other one being based on their independent or minority party status, and the basis there being the concern of the courts of excluding those voices from the marketplace. In this case, this is not where… Do you treat access different than qualifications? In other words, both of those sound like access cases. Those are traditional ballot access cases. Is there a reason to treat it different than qualifications? Potentially and arguably. In this case, we're dealing obviously with qualifications for office, that you are not eligible for the office once you have held that one particular seat for the terms that you're allowed. But as far as the treatment of it, it's still content neutral. It doesn't specify these candidates, these views are no longer allowed on the ballot or you can't be on the ballot if you're belonging to this party or if you don't have enough popular support. Under this restriction, could someone who's been a member of the Assembly and termed that, could they run for the Senate? I'm sorry? I mean, could they run for the other house? Yes. That would be the idea that if you start as a state representative, you could then become a state senator or you could go to the executive office or you could start running for federal offices. Could Michigan make you do one before the other? No. Why not? Why not? Qualification to run in the Senate is you have been in the House. Why couldn't they set that as a qualification? I think they could. They just haven't. That would be a basis that the people of the state of Michigan could determine that that was an objective they wanted to obtain for the purpose of, I guess, making the Senate have more experience. But that's not the way it's structured now. Oh, I understand. That would be a determination that the people would be free to make in structuring their government just as they were free here to structure their government to say that we want the legislature and the chambers to turn over on a regular interval. Have there been movements to change the law? Not that I'm aware of, Your Honor. There may be people at the edges, but I am not aware of any serious effort to repeal the term limits in the 23 years since they've been enacted, which I think further undercuts the argument that the people felt that they were duped or that they have had a ruinous effect on state government. The people apparently do not agree with the appellant's perspective on that. With that, I don't have much else to say, so unless the Court has any additional questions, we will ask that the Court affirm the district courts. Thank you, Counsel. Thank you. Three quick points that kind of track my opening three points based on some pretty crucial concessions that we heard for the first time this morning. First, my friend admits that Gravelin applies strict scrutiny, and his suggestion is that it's only because there you were talking about an independent candidate as opposed to one associated with the parties. But what Gravelin says is that when a candidate, not a voter, when a candidate wishes to appear as one party's standard bearer and voters want to exercise their constitutional right to cast a ballot for this candidate, the Supreme Court has viewed state-imposed restrictions on this fundamental process with great skepticism. The very next sentence is, the Supreme Court has also recognized the importance of protecting independent candidates' access. So, yes, independent candidates' access was a portion of that opinion. Well, that goes to my second point, and that's the Thornton case. And my friend admitted that access is different than qualification, and he has to, because that's exactly what Thornton says. And it makes sense, because it's possible for me to get 30,000 signatures. It's possible for me to raise $700. If I've served my six years in the Michigan House, that's it. No amount of candidate support could possibly get me across that barrier. I could have 100 percent of the electorate in my district want to support me, and I'm out. That's why qualifications have to be measured in a way that's stricter than mere ballot access. I mean, I understand your argument, but doesn't that run into Gregory and Bullock and those cases? And Lubin is not a qualification case, right? It's a filing fee case. It's a filing fee. Thornton is the case that gets me past that. Why do the qualification cases not point the other way? The qualification cases, I think, can be explained in two ways. One is that they recognize there is no fundamental right. That's something we can see. I'm not quibbling with that. But two, I think they kind of depend on this balancing scale that you look at when you're talking about First Amendment and association rights. They apply a lower, not a higher level of scrutiny, at least the qualification cases that we've seen. Because to the extent there are qualification cases, and there aren't many, the burden was low. When you're talking about a 70-year age limit, you've had your entire runway, basically, to serve on the bench. The burden on the candidates are small in that instance. When you're talking about six years and then a lifetime ban, it's completely different. And that's why we get to the third concession that my friend made. My problem, and I understand that argument, and it's a creative argument. I don't see anything in Gregory that says that. Like, I don't see them digging in and saying, and maybe that leaves some room for explanation. But they don't say, hey, this is, we have to measure the burden. Yeah, and here's why. The flip side is you're asking us, courts, to get involved in policy decisions about how many years is enough. Because we'd be saying ten instead of six. And that just sounds like a business courts don't belong in. Let me take those questions in order. First, with respect to Ashcroft. Ashcroft was an Age Discrimination and Employment Act case and an Equal Protection case where they applied rational basis because age was not a protected classification. So you can't look at Ashcroft and take away anything with respect to term limits. So that's... Other than it's a qualification. Other than it's a qualification. And there was no fundamental right to her office. And there was also no First Amendment Association claim pled in that case. The Supreme Court had nothing to analyze in that context. That's why cases like Gravelin and Ashaki, that's the best we have. So then on the second guessing, we're not asking you to do that. All we're asking you to do is the same thing the Supreme Court has done in the campaign finance context. You look at the total world of regulations and you say, okay, Vermont has the smallest campaign limits in the country. Those are off the table. As long as you satisfy the Goldilocks Principle, if you're somewhere within the range of the mainstream, then you can satisfy any level of scrutiny. The relief you want is for us to strike it down, right? And say, if you want term limits, you're going to have to go through the whole process again and pass them, right? We can't reform the law. I don't think you can. I wish I could stand here and tell you. There's no way we can rewrite the law. Exactly. Isn't that more drastic? So the only thing, the win would be we strike down this law 20-whatever years later. Yes. And if the people of Michigan want term limits, they're going to have to go back through the entire process, do it again with the risk that they might be too severe and they'll be back in court and the millions of dollars that get spent on that campaign are thrown out the window. Several thoughts on that. Appreciating that they have some self-interest here. The legislators in Lansing, both sides of the aisle, have agreed for years that there's a problem with Michigan's term limits. They give too much power. All the people disagree. So you've got the politicians on one side. Understood. And the people on the other. That's not my point. That's not where I was going. But the point is that if you would strike this down, the legislature would quickly act to impose new legislation. It may even look similar to this, but it wouldn't have the lifetime ban. And then if the people wanted to do something more than that, they could run their ballot campaign. But there's no risk. I mean, you're asking every area then to put in their own bans, basically. Every area. I mean, you're saying like, okay, we're going to get the legislature to do this and put in bans, but we know that politicians, that these are self-interested politicians. They're not interested in the. Then they should go out and convince the people. But all these arguments go to the practicalities of what happens if you strike it down. If this was the no bearded candidates can run, we wouldn't be having this discussion, even though someone could go out and have a different facial hair ban, you know, when the Democratic process is. Those examples, they don't pass those, right? They pass rational limits on candidates. But that's the problem. If you look at the spectrum of term limit regimes that are out there, Michigan's is that low. But there always is a range. Somebody is at the bottom. Someone's at the top of any range. And you're saying, well, oh, if you're one of the extremes, that's challengeable. No, you have to be in the middle to be Goldilocks. I don't think that's the law. That's exactly the way that the U.S. Supreme Court applies free speech and associational rights in the context of campaign contributions. It looks at the range of possibilities out there, says this one is too low, Vermont, obviously, they held that one explicitly. But just last year, they had a summary reversal in a case involving Alaska campaign contributions. Same principle. They were the outlier. They were the lowest in the country. They hadn't been adjusted for inflation. When you're talking about term limits, there's no other state in the country that says six years in the House. That seems like an absurd constitutional principle, that we should look at the mainstream and that judges what the Constitution is. No more extreme than saying, as we would all recognize, including my friend, that a 30-year age cap, a limit, if you're more than 30 years old, you can't run, would be unconstitutional. There would be no rational basis for that. I mean, that would be. Sure there would be. You could analyze that under rational basis. So voters don't want to have anyone over 30 years old because they're not woke enough to put into policies that will protect minority rights, people of color, LGBTQ rights, and things like that. So we only want people between ages 20 and 30, rational basis. But yet, no court in the country would uphold that under a First Amendment association and free speech rationale because it's too extreme. Same principle here. Any further questions? Thank you, counsel. Thank you.